**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

C.A. No. CV-05-126-T

| | |
|---|---|
| Beverly Resendes, Individually and | ) |
| Beverly Resendes as Executrix of | ) |
| the Estate of Wayne M. Resendes | ) |
| a.k.a. Wayne Manuel Resendes, Sr. | ) |
| *Plaintiffs,* | ) |
| | ) |
| Vs. | ) |
| | ) |
| Life Investors Insurance Company | ) |
| of America, Alias, John E. | ) |
| Heiss, Alias, Doe & Doe I through | ) |
| Doe 50 Inclusive, | ) |
| *Defendants.* | |

**PLAINTIFFS' MOTION TO REMAND TO STATE COURT**
**Oral Hearing Requested**
[28 U.S.C. sec. 1446, 1447]

Now come the Plaintiffs, by their Attorney, within thirty (30) days after notice of the removal of this action pursuant to 28 U.S.C. sec. 1446, and move for the remand of this matter to the Rhode Island Superior Court pursuant to 28 U.S.C. sec. 1447. As grounds for this motion the Plaintiffs say that there is no basis for removal and that this Court therefore lacks jurisdiction over this matter.

The bases for this motion are set forth more fully in an accompanying memorandum.

Respectfully submitted,
PLAINTIFFS
By their Attorney:

Wayne G. Resmini

Wayne G. Resmini (No. 6373)
207 Waterman St.
Providence, RI 02906
Tel. 401-751-6655
Fax 401-751-6282

6

<u>Request for Oral Hearing</u>: Pursuant to Local Rule 12(b) Plaintiffs' request an oral hearing on this motion. This matter involves the subject matter jurisdiction of this Court and Plaintiffs submit that an oral hearing on the issues presented would be of assistance to the Court in resolving this matter.

CERTIFICATION

I hereby certify that the within document was served upon counsel for all parties by mailing a copy, postage prepaid, to the address of their counsel of record as follows:

Atty Brooks R. Magratten
Vetter & White
20 Washington Place
Providence, RI 02903

Atty James T. McCormick
128 Dorrance St. – Suite 300
Providence, RI 02903-2814

Wayne G Resmini

Date: 4/26/05

**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

C.A. No. CV-05-126-T

Beverly Resendes, Individually and )
Beverly Resendes as Executrix of )
the Estate of Wayne M. Resendes )
a.k.a. Wayne Manuel Resendes, Sr. )
*Plaintiffs,* )
)
Vs. )
)
Life Investors Insurance Company )
of America, Alias, John E. )
Heiss, Alias, Doe & Doe I through )
Doe 50 Inclusive, )
*Defendants.*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND TO STATE COURT**
[28 U.S.C. sec. 1446, 1447]

This matter is before the court on the Plaintiffs' motion to remand to Rhode Island Superior Court. The case arises in connection with a life insurance policy issued to Plaintiff Beverly Resendes' deceased husband, Wayne M. Resendes, Sr. Plaintiff initiated this action in Providence Superior Court. The Plaintiff is a Rhode Island resident. Defendant Life Investors Insurance Company [hereinafter "Life Investors"] is a resident of Iowa. Defendant John Heiss is a resident of Rhode Island. Despite the obvious lack of diversity, Defendants Life Investors and Heiss removed this case based upon this court's diversity jurisdiction, 28. U.S.C. sec. 1332. Defendants suggest in their removal papers that this lack of diversity does not defeat jurisdiction because the non-diverse defendant, Heiss, has been "fraudulently joined." Defendants base this allegation on the assertion that Heiss is an agent of Life Investors and that "there is no reasonable basis for imposing liability against him." (Def. notice of removal, para. 2). Defendants

do not support their assertion with any facts, but instead with the conclusory allegation that Heiss has been "fraudulently joined."

Plaintiffs submit that the Defendants have failed to meet their burden relative to an allegation of "fraudulent joinder." There is a colorable basis under Rhode Island law for the Plaintiffs claim against Heiss and he is therefore an appropriate defendant. The within motion for remand must therefore be granted.

1. **Plaintiffs have failed to meet their burden of proof regarding their claim of fraudulent joinder.** Courts have universally held that a party alleging fraudulent joinder bears a "heavy burden of persuasion." Pampillonia v. RJR Nabisco, Inc. 138 F.3d 459 (2d Cir. 1998) (burden rests with defendant to show that there is no possibility that plaintiff can recover against nondiverse defendant in state proceeding); Pacheco De Perez v. AT&T, 139 F.3d 1368 (11th Cir. 1998) (defendant has "heavy burden" to establish fraudulent joinder); Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir. 1999) (in considering allegation of fraudulent joinder, all legal issues must be weighed in favor of plaintiff and even then standard is more favorable to plaintiff that 12(b)(6) standard). Only recently, a Judge of this District reiterated that "'[a] party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction.' Brawn v. Coleman, 167 F. Supp. 2d 145, 148 (D. Mass. 2001). The removal statute, moreover, 'should be strictly construed and any doubts about the propriety of removal should be resolved against the removal of an action.'" Cardillo v. Cardillo, No. 04-27-S, slip op. at 24 (D.R.I. 2005).

Defendants assert that this court should "disregard" the nondiverse defendant – Heiss – in determining whether removal is appropriate in this case, relying upon the First

Circuit's decision in Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875 (1st Cir. 1983). Although the First Circuit in that case does mention in dicta that a "fraudulently joined" defendant should be disregarded for purposes of analyzing discovery, that is not the holding of the case. Rather, the First Circuit in Polyplastics dismissed the appeal as an interlocutory appeal over which it lacked jurisdiction. The dictum in Polycplastics, moreover, does not provide any support for the Defendants here, who simply make conclusory assertions regarding the potential liability of Heiss.

Other Circuits have recognized that in alleging "fraudulent joinder," the Defendant must carry the burden of establishing that the Plaintiff has no possibility of recovery against the nondiverse defendant. As the Fourth Circuit put it in Mayes v. Rapoport, 198 F.3d 457 (4th Cir. 1999), "there need only be a slight possibility of a right to relief to defeat a claim of fraudulent joinder." Id. at 466 (citations omitted). In that case the court stated that even a "glimmer of hope" that the Plaintiff could recover against the nondiverse defendant was sufficient to defeat the Defendants' assertion of fraudulent joinder. Id. The Fourth Circuit reversed the District Court and remanded with direction that the case be returned to state court. Similarly, in B, Inc. v. Miller Brewing, 663 F.2d 545 (5th Cir. 1981), the Fifth Circuit reversed the District Court and remanded with instructions that the case be sent back to state court. The court noted that the Defendant has a "heavy burden" when claiming "fraudulent joinder:"

> The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been an outright fraud in the plaintiffs pleading of jurisdictional facts.

Id. at 549 (citations and footnote omitted). In analyzing the allegation of fraudulent joinder, the district court must "resolve all disputed questions of fact in favor of the plaintiff . . ." Id. at 551.

In this case the Defendants have not even attempted to carry their "heavy burden." Instead they merely assert – without citation to authority – that Heiss has been "fraudulently[1] joined" because they believe that there is no possibility that the Plaintiff could state a claim against Heiss.

In fact, Plaintiffs allege in paragraphs 4, 8, and 77 that Heiss was doing business as an insurance broker[2] and that on December 8, 2003, decedent Wayne Resendes, Sr., entered into a contract of life insurance with Heiss. After Wayne Resendes passed away on December 25, 2003, Plaintiffs allege that Heiss acted in bad faith in the handling of the claim for coverage pursuant to the policy. Complaint Paragraph 80. Defendant Life Investors refused to provide coverage pursuant to the policy, alleging that Wayne Resendes, Sr. gave incomplete or inaccurate medical information at the time of the policy's inception. Although not reflected on the face of the Plaintiffs' complaint, the Plaintiffs represent that, in fact, it was Heiss and not Wayne Resendes, Sr., who completed the policy application. [Plaintiff's Affidavit, appended hereto]. In fact, Plaintiffs expect to present evidence that Heiss specifically advised Mr. Resendes not to give complete and detailed information in the completion of the application for coverage, and that the only portion of the completed application that Mr. Resendes saw was the signature page.

---

[1] The Defendants' allegation of "fraudulent joinder" is also defective because it fails to meet the requirement of Fed. R. Civ. P. 9(b) that all averments of fraud be stated with particularity.

[2] Heiss admits in paragraph 4 of his answer that he was an insurance broker.

Based on these facts, the Defendants simply cannot satisfy their "heavy burden" of establishing that the Plaintiffs have no possibility of recovery against Heiss.

2. **Heiss's role as agent for Life Investors does not absolve him of liability to Plaintiffs**. Although it is not entirely clear from the Defendants' filing, it may well be that their theory of "fraudulent joinder" proceeds from the erroneous assumption that Heiss – an insurance broker – cannot be liable for acts in connection with his agency for Life Investors. To the extent that Defendants base their claim of removal on that theory, their reliance is misplaced and does not represent an accurate understanding of Rhode Island law.

The Rhode Island Supreme Court has recognized that an insurance agent or broker may serve in the capacity as agent for the company issuing the policy as well as agent for the insured who is purchasing the policy. E.g., General Accident Insurance Co. v. American National Fireproofing, 716 A.2d 751 (R.I. 1998). In that case observed that "a person might simultaneously represent two independent principals." Under such circumstances, the agent can be liable to the person purchasing the insurance for failing to carry out all duties to that person. Id Thus, the Defendants' assertion in their removal papers that Heiss was an agent of Life Investors does not resolve all questions of Heiss's potential liability to the Plaintiffs.

Such matters are not typically the subject of summary disposition, as the Rhode Island Supreme Court held in Pacheco v. Massachusetts Casualty Ins. Co., 610 A.2d 111 (R.I. 1992). In that case the plaintiff sued an insurance company as well as the agent who sold him his disability policy. The trial justice granted the agent's motion for summary judgment, but the Supreme Court reversed:

> We have stated that "while an agent working for a known principal is usually not personally liable for acts done within the scope of his authority, he may either expressly or impliedly incur such personal liability. . . . . If the agent has bound himself personally, he will be bound accordingly." . . . In such a case personal liability will arise from a contractual obligation the agent has established with the third party. . . . Determining whether an agent has bound himself personally is a question of fact.

Id. at 113 (citations omitted; emphasis added). Thus, an agent may be deemed personally liable in a variety of circumstances, for example "for acts to which the agent has bound himself or herself – either expressly or impliedly – under a contract." C.C. Plumb Mixes, Inc. v. Stone, 108 R.I. 75, 272 A.2d 152 (1971); see also Kenney Manufacturing Co. v. Starkweather & Shepley, Inc., 643 A.2d 203 (R.I. 1994).

As an insurance agent or broker, moreover, Heiss was obligated to conform with applicable licensing statutes and regulations. Insurance Regulation No. 27, issued by the Division of Insurance of the Rhode Island Department of Business Regulations required an agent to advise the prospective purchaser of the full name of the insurance company that he is representing. Id. sec. 6(B). The agent is likewise required to provide each prospective purchaser with a buyer's guide – in a form approved by the Division of Insurance – outlining factor that the purchaser should consider, and affording information regarding the cost of various types of insurance. Failure to comply with these terms constitutes "an omission which misrepresents the benefits, advantages, conditions or terms of an insurance policy." Id. sec.7.

The imposition of these regulatory duties clearly modifies the ordinary concepts of principal and agent in the insurance context. In this case, the dual agency – where Heiss represented both the decedent and the insurer – gave rise to duties running from Heiss to the Plaintiff independent of the relationship between Heiss and Life Investors.

Heiss may well contest the factual allegations underlying the Plaintiffs' theories of his liability, but for purposes of removal and remand, this Court must weigh all disputed factual matters in the Plaintiffs' favor and against removal. Even if this Court concluded that the Plaintiffs' chance of recover against Heiss were a "glimmer of hope," Mayes v. Rapoport, supra, the Court would be obliged to reject the Defendants' claim of fraudulent joinder and remand this case to Rhode Island Superior Court.

**Conclusion**. For the foregoing reasons, and for such additional reasons as may appear at the oral hearing on this matter[3], the Plaintiffs respectfully move for entry of an order remanding this matter to Rhode Island Superior Court pursuant to 28 U.S.C. sec. 1447.

Respectfully submitted,
PLAINTIFFS
By their Attorney:

Wayne G. Resmini (No. 6373)
207 Waterman St.
Providence, RI 02906
Tel. 401-751-6655
Fax 401-751-6282

[3] Pursuant to Local Rule 12(b), Plaintiffs have endorsed upon their motion a request for oral hearing in this matter.

CERTIFICATION

I hereby certify that the within document was served upon counsel for all parties by mailing a copy, postage prepaid, to the address of their counsel of record as follows:

Atty Brooks R. Magratten
Vetter & White
20 Washington Place
Providence, RI 02903

Atty James T. McCormick
128 Dorrance St. – Suite 300
Providence, RI 02903-2814

Wayne S Ramini
Date: 4/25/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Beverly Resendes, et als<br>v.<br>John Heiss, Life Investors<br>Insurance Company of America,<br>et als. | )<br>)<br>)<br>)<br>) | C.A. No. 05-126T |

**AFFIDAVIT OF BEVERLY RESENDES**

State of Rhode Island)
County of Providence )

I, Beverly Resendes, being duly sworn, state:

1. I am the plaintiff in this case, and I am the widow of Wayne Resendes, Sr.

2. On or about December 8, 2003 Mr. John Heiss came to our home to sell life insurance to Wayne.

3. Mr. Heiss filled out all the application form for Wayne. Wayne informed Mr. Heiss of all of his health information as well as all medication he was on. Mr. Heiss said the only medical information that the insurance company looks at was the high blood pressure. Which Wayne informed Mr. Heiss.

4. The only part of the completed form that either my husband or I saw on December 8, 2003 was the signature line, where Mr. Heiss directed Wayne to sign attached hereto as Exhibit A.

5. My husband did not fill out the medical history portion of the application or any other portion other than the Signature line. Mr. Heiss filled in everything except the signature line.

6. At no time was my husband Wayne, given "The Life Insurance Buyer's Guide" attached hereto Exhibit B.

7. My husband passed away on December 25, 2003.

**Subscribed and sworn to on pain and penalty of perjury this** 22 **day of April 2005.**

Beverly Resendes
Beverly Resendes

**Under penalties of perjury, I hereby certify (1) that the Social Security or Taxpayer I.D. number above on this application is correct and (2) that I am currently not subject to backup withholding. [Cross out (2) if not correct.] See below*****

The statements and answers on this Application are true and complete to the best of my knowledge and belief. **It is agreed that** (a) this application and any amendments hereto, shall be the basis of any insurance granted; (b) no agent has authority to waive the answer to any question in the application, to pass on insurability, to waive any of the other Company's rights or requirements or to make or alter any contract; (c) acceptance of any policy issued shall constitute ratification of any endorsements in the space entitled "For Administrative Office Endorsement," except that no change in the amount, classification, plan of insurance or annuity, or benefits shall be effective unless agreed to in writing by the Applicant, and **(d) no insurance or annuity shall be considered in force unless and until a policy shall have been issued by the Company and said policy manually received and accepted by the Applicant and the full first premium paid thereon, all during the lifetime and before any change in the insurability of any person proposed for insurance from that stated herein.**

The Company shall have sixty days from the date hereof within which to consider and act on this application and if within such period a policy has not been received by the Applicant or if notice of approval or rejection has not been given, then this application shall be deemed to have been declined by the Company.

Unless otherwise stated the undersigned Applicant is the Premium Payor and the Owner of the policy applied for.

**AUTHORIZATION:** I authorize any licensed physician, medical practitioner, hospital, clinic, medical or medically related facility, Medical Information Bureau, the Veteran's Administration, or other health care provider, my employer and any consumer reporting agency or insurance company who possess information concerning any care, treatment or advice rendered to me to provide such information to Life Investors Insurance Company of America, its representatives or its reinsurers. A photocopy of this Authorization shall be considered as valid as the original, which I or my authorized representative may receive a copy of upon request. Life Investors Insurance Company of America, or its reinsurers, may release this information about me to its reinsurers, to the Medical Information Bureau or to another insurance company to which I have applied. This authorization is limited to a period of 30 months commencing on the date of this application. I represent that the foregoing statements are complete and true to the best of my knowledge and belief. I understand that the date coverage becomes effective for any policy applied for on this application will be the date recorded on the Policy Specification page, not the date the application is signed. I understand coverage will be effective when the first premium is paid, provided all persons proposed for insurance are acceptable to the company under its rules and limits as standard risks, on the plan and for the amount applied for and the rate of premium declared. I authorize payroll deduction of the premiums, and acknowledge receipt of the MIB Disclosure Notice and Fair Credit Reporting Act Notice.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

Dated at Johnston, R.I. (city) (state) this 8th day of December (month) 2003 (year)

(X) Wayne M Resendes Sr.
Signature of Proposed Insured

Signature of Additional Insured

Signature of Applicant if Other Than Insured
☐ Owner ☐ Other

Signature of Parent or Legal Guardian for Insured's 15 and under

Best time to call for a personal history interview ____ a.m. ____ p.m. Okay to contact at work? Yes ☐ No ☒

**AGENT INFORMATION & SIGNATURE**

| Signature of Agent | (Print Last Name) | Agent # | Telephone Number |
|---|---|---|---|
| [signature] | Hess | 9762875 | (401) 349-4157 |
| Split Agent Signature (If Applicable) | (Print Last Name) | Agent # | ( ) Telephone Number |

Do you have any knowledge or reason to believe that the insurance applied for will replace or change any existing insurance or annuity? Yes ☐ No ☒

If yes, what company? __________ Policy # __________

## APPENDIX

## LIFE INSURANCE BUYER'S GUIDE

The language in the Buyer's Guide is limited to that contained in this Appendix, or to language approved by the Director of Business Regulation. Companies may purchase personalized brochures from the NAIC or may reproduce the Buyer's Guide in their own type style (at least 10 point) and format.

The Buyer's Guide shall read as follows:

## LIFE INSURANCE BUYER'S GUIDE

This guide can help you when you shop for life insurance. It discusses how to:

- Find a policy that meets your needs and fits your budget
- Decide how much insurance you need
- Make informed decisions when you buy a policy

*Prepared by the National Association of Insurance Commissioners*

The National Association of Insurance Commissioners is an association of state insurance regulatory officials. This association helps the various Insurance Departments to coordinate insurance laws for the benefit of all consumers.

This guide does not endorse any company or policy.

(optional) Reprinted by [Name of insurer or other person]

### IMPORTANT THINGS TO CONSIDER

1. Review your own insurance needs and circumstances. Choose the kind of policy that has benefits that most closely fit your needs. Ask an agent or company to help you.

2. Be sure that you can handle premium payments. Can you afford the initial premium? If the premium increases later and you still need insurance, can you still afford it?

3. Don't sign an insurance application until you review it carefully to be sure all the answers are complete and accurate.

4. Don't buy life insurance unless you intend to stick with your plan. It may be very costly if you quit during the early years of the policy.

5. Don't drop one policy and buy another without a thorough study of the new policy and the one you have now. Replacing your insurance may be costly.

6. Read your policy carefully. Ask your agent or company about anything that is not clear to you.

7. Review your life insurance program with your agent or company every few years to keep up with changes in your income and your needs.

## BUYING LIFE INSURANCE

When you buy life insurance, you want coverage that fits your needs.

First, decide how much you need-- and for how long-- and what you can afford to pay. Keep in mind the major reason you buy life insurance is to cover the financial effects of unexpected or timely death. Life insurance can also be one of many ways you plan for the future.

Next, learn what kinds of policies will meet your needs and pick the one that best suits you.

Then, choose the combination of policy premium and benefits that emphasizes protection in case of early death, or benefits in case of long life, or a combination of both.

It makes good sense to ask a life insurance agent or company to help you. An agent can help you review your insurance needs and give you information about the available policies. If one kind of policy doesn't seem to fit your needs, ask about others.

This guide provides only basic information. You can get more facts from a life insurance agent or company or from your public library.

## WHAT ABOUT THE POLICY YOU HAVE NOW?

If you are thinking about dropping a life insurance policy, here are some things you should consider:

- If you decide to replace your policy, don't cancel your old policy until you have received the new one. You then have a minimum period to review your new policy and decide if it is what you wanted.

- It may be costly to replace a policy. Much of what you paid in the early years of the policy you have now, paid for the company's cost of selling and issuing the policy. You may pay this type of cost again if you buy a new policy.

- Ask your tax advisor if dropping your policy could affect your income taxes.

- If you are older or your health has changed, premiums for the new policy will often be higher. You will not be able to buy a new policy if you are not insurable.

- You may have valuable rights and benefits in the policy you now have that are not in the new one.

- If the policy you have now no longer meets your needs, you may not have to replace it. You might be able to change your policy or add to it to get the coverage or benefits you now want.

- At least in the beginning, a policy may pay no benefits for some causes of death covered in the policy you have now.

In all cases, if you are thinking of buying a new policy, check with the agent or company that issued you the one you have now. When you bought your old policy, you may have seen an illustration of the benefits of your policy. Before replacing your policy, ask your agent or company for an updated illustration. Check to see how the policy has performed and what you might expect in the future, based on the amounts the company is paying now.

## HOW MUCH DO YOU NEED?

Here are some questions to ask yourself:

- How much of the family income do I provide? If I were to die early, how would my survivors, especially my children, get by? Does anyone else depend on me financially, such as a parent, grandparent, brother or sister?

- Do I have children for whom I'd like to set aside money to finish their education in the event of my death?

- How will my family pay final expenses and repay debts after my death?

- Do I have family members or organizations to whom I would like to leave money?

- Will there be estate taxes to pay after my death?

- How will inflation affect future needs?

As you figure out what you have to meet these needs, count the life insurance you have now, including any group insurance where you work or veteran's insurance. Don't forget Social Security and pension plan survivor's benefits. Add other assets you have: savings investments, real estate and personal property. Which assets would your family sell or cash in to pay expenses after your death?

## WHAT IS THE RIGHT KIND OF LIFE INSURANCE?

All policies are not the same. Some give coverage for your lifetime and others cover you for a specific number of years. Some build up cash values and others do not. Some policies combine different kinds of insurance, and others let you change from one kind of insurance to another. Some policies may offer other benefits while you are still living. Your choice should be based on your needs and what you can afford.

There are two basic types of life insurance: term insurance and cash value insurance. Term insurance generally has lower premiums in the early years, but does not build up cash values that you can use in the future. You may combine cash value life insurance with term insurance for the period of your greatest need for life insurance to replace income.

**Term Insurance** covers you for a term of one or more years. It pays a death benefit only if you die in that term. Term insurance generally offers the largest insurance protection for your premium dollar. It generally does not built up cash value.

You can renew most term insurance policies for one or more terms even if your health has changed. Each time you renew the policy for a new term, premiums may be higher. Ask what the premiums will be if you continue to renew the policy. Also ask if you will lose the right to renew the policy at some age. For a higher premium, some companies will give you the right to keep the policy in force for a guaranteed period at the same price each year. At the end of that time you may need to pass a physical examination to continue coverage, and premiums may increase.

You may be able -- trade many term insurance policies for a cash value policy during a conversion period -- even if you are not in good health. Premiums for the new policy will be higher than you have been paying for the term insurance.

**Cash Value Life Insurance** is a type of insurance where the premiums charged are higher at the beginning than they would be for the same amount of term insurance. The part of the premium that is not used for the cost of insurance is invested by the company and builds up a cash value that may be used in a variety of ways. You may borrow against a policy's cash value by taking a policy loan. If you don't pay back the loan and the interest on it, the amount you owe will be subtracted from the benefits when you die, or from the cash value if you stop paying premiums and take out the remaining cash value. You can also use your cash value to keep insurance protection for a limited time or to buy a reduced amount without having to pay more premiums. You also can use the

cash value to increase your income in retirement or to help pay for needs such as a child's tuition without canceling the policy. However, to build up this cash value, you must pay higher premiums in the earlier years of the policy. Cash value life insurance may be one of several types; whole life, universal life and variable life are all types of cash value insurance.

***Whole Life Insurance*** covers you for as long as you live if your premiums are paid. You generally pay the same amount in premiums for as long as you live. When you first take out the policy, premiums can be several times higher than you would pay initially for the same amount of term insurance. But they are smaller than the premiums you would eventually pay if you were to keep renewing a term policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years or until age 65. Premiums for these policies are higher since the premium payments are made during a shorter period.

***Universal Life Insurance*** is a kind of flexible policy that lets you vary your premium payments. You can also adjust the face amount of your coverage. Increases may require proof that you qualify for the new death benefit. The premiums you pay (less expense charges) go into a policy account that earns interest. Charges are deduced from the account. If your yearly premium payment plus the interest your account earns is less than the charges, your account value will become lower. If it keeps dropping, eventually your coverage will end. To prevent that, you may need to start making premium payments, or increase your premium payments, or lower your death benefits. Even if there is enough in your account to pay the premiums, continuing to pay premiums yourself means that you build up more cash value.

***Variable Life Insurance*** is a kind of insurance where the death benefits and cash values depend on the investment performance of one or more separate accounts, which may be invested in mutual funds or other investments allowed under the policy. Be sure to get the prospectus from the company when buying this kind of policy and STUDY IT CAREFULLY. You will have higher death benefits and cash value if the underlying investments do well. Your benefits and cash value will be lower or may disappear if the investments you chose didn't do as well as you expected. You may pay an extra premium for a guaranteed death benefit.

## LIFE INSURANCE ILLUSTRATIONS

You may be thinking of buying a policy where cash values, death benefits, dividends or premiums may vary based on events or situations the company does not guarantee (such as interest rates). If so, you may get an illustration from the agency or company that helps explain how the policy works. The illustration will show how the benefits that are not guaranteed will change as interest rates and other factors change. The illustration will show you what the company guarantees. It will also show you what could happen in the future. Remember that nobody knows what will happen in the future. You should be ready to adjust your financial plans if the cash value doesn't increase as quickly as shown

in the illustration. You will be asked to sign a statement that says you understand that some of the numbers in the illustrations are not guaranteed.

## FINDING A GOOD VALUE IN LIFE INSURANCE

After you have decided which kind of life insurance is best for you, compare similar policies from different companies to find which one is likely to give you the best value for your money. A simple comparison of the premiums is not enough. There are other things to consider. For example:

- Do premiums or benefits vary from year to year?
- How much do the benefits build up in the policy?
- What part of the premiums or benefits is not guaranteed?
- What is the effect of interest on money paid and received at different times on the policy?

Once you have decided which type of policy to buy, you can use a cost comparison index to help you compare similar polices. Life insurance agents or companies can give you information about several different kinds of indexes that each work a little differently. One type helps you compare the costs between two policies if you give up your policy and take out the cash value. Another helps you compare your costs if you don't give up your policy before its coverage ends. Some help you decide what kind of questions to ask the agent about the numbers used in an illustration. Each index is useful in some ways, but they all have shortcomings. Ask your agent which will be most helpful to you. Regardless of which index you use, compare index numbers only for similar policies--those that offer basically the same benefits, with premiums payable for the same length of time.

Remember that no one company offers the lowest cost at all ages for all kinds and amounts of insurance. You should also consider other factors:

- How quickly does the cash value grow? Some polices have low cash values in the early years that build up quickly later on. Other policies have a more level cash value build-up. A year-by-year display of values and benefits can be very helpful. (The agent or company will give you a policy summary or an illustration that will show benefits and premiums for selected years.)
- Are there special policy features that particularly suit your needs?
- How are nonguaranteed values calculated? For example, interest rates are important in determining policy returns. In some companies increases reflect the average interest earnings on all of that company's policies regardless of when issued. In others, the return for policies issued in a recent year, or a

group of years, reflects the interest earnings on that group of policies; in this case, amounts paid are likely to change more rapidly when interest rates change.