UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BEVERLY RESENDES, Plaintiff | ) | C.A. No. 05-0126/T |
| v. | ) | |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA, et al., Defendants | ) | |

**DEFENDANT LIFE INVESTORS INSURANCE COMPANY OF AMERICA'S OBJECTION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

Defendant Life Investors Insurance Company of America ("Life Investors") objects to plaintiff's motion to dismiss counterclaims for lack of subject matter jurisdiction. Defendant files herewith a supporting memorandum of law.

Brooks R. Magratten, Esq., #3585
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant Life Investors Insurance Company of America
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated: May 23, 2005

12

## CERTIFICATE OF SERVICE

To:

Wayne G. Resmini, Esq.
Resmini Law Associates
207 Waterman Street
Providence, RI 02903

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street, Suite 330
Providence, RI 02903-2814

I hereby certify that I caused to be served on the above-named counsel of record a copy of the within Objection to Plaintiff's Motion To Dismiss Counterclaims by mailing first class mail, postage prepaid, on the 23rd day of May 2005.

Michael J. Daly

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BEVERLY RESENDES, Plaintiff | ) | C.A. No. 05-0126/T |
| v. | ) | |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA, et al., Defendants | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT LIFE INVESTORS INSURANCE COMPANY OF AMERICA'S OBJECTION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

Defendant Life Investors Insurance Company of America ("Life Investors") submits this memorandum in support of its objection to plaintiff Beverly Resendes's[1] motion to dismiss counterclaims for lack of subject matter jurisdiction.

## I
## FACTS AND TRAVEL

On December 8, 2003 plaintiff's late husband, Wayne Resendes, applied for a life insurance policy from Life Investors. Defendant John Heiss, an insurance agent, solicited the application and forwarded it to Life Investors. Based on that application, Life Investors issued policy number 012931668. See Policy attached to complaint. Mr. Resendes died of heart disease nine days later, on December 25, 2003. Plaintiff made a claim on the policy.

Because Mr. Resendes died within the two-year contestable period, Life Investors conducted a routine investigation of the information in the application. Life Investors learned that Mr. Resendes concealed that he smoked cigarettes in the twelve months preceding his application and that he had been treated for depression. Life Investors deemed Mr. Resendes'

[1] Plaintiff Beverly Resendes brings this action individually and in her capacity as executrix of the estate of her late husband, Wayne M. Resendes. Although plaintiff's submissions to this Court refer to plaintiffs, Life Investors refers to Mrs. Resendes as a single plaintiff.

concealment of his cigarette smoking a material misrepresentation, denied plaintiff's claim for insurance proceeds, tendered a full refund of premiums and notified plaintiff that the policy was being rescinded. Plaintiff nowhere alleges that Heiss participated in Life Investors' investigation or decision to deny her claim. Heiss in fact took no part in Life Investors' investigation or claim decision.

Plaintiff thereafter filed suit in Rhode Island Superior Court against Life Investors and Heiss, seeking benefits and damages in excess of $93,000. Plaintiff alleges that she is a Rhode Island citizen. See Complaint at ¶¶ 1 & 2. Heiss also is a Rhode Island citizen. Life Investors is an Iowa corporation with its principal place of business in Iowa. Plaintiff complains principally of Life Investors' denial of benefits under the policy.

Defendants removed the case on March 25, 2005, invoking diversity jurisdiction. Defendants specified that Heiss is a fraudulently joined defendant and, therefore, his citizenship should not be considered for purposes of establishing diversity. See Notice of Removal at ¶ 10. After removing the case, Life Investors filed its answer and counterclaim for rescission and declaratory judgment that the policy was void ab initio. See Answer of Life Investors Insurance Company of America and Counterclaims, at ¶¶ 57-72.

Plaintiff moved to remand on April 26, 2005, arguing that Heiss is an appropriate defendant. Shortly after moving to remand, plaintiff filed the instant motion to dismiss plaintiff's declaratory judgment counterclaim[2] for lack of complete diversity. Plaintiff's Rule 12(b)(1) motion to dismiss parallels her motion to remand. As in her motion to remand, plaintiff contends

[2] Curiously plaintiff does not challenge the propriety of Life Investors' counterclaim for rescission. The decision to focus her jurisdictional attack only on the declaratory judgment count is evident from the wording of plaintiff's motion and supporting memorandum. In those documents, plaintiff repeatedly argues that this Court has no jurisdiction over Life Investors' "counterclaim" – singular. Of the two counterclaims Life Investors asserted, plaintiff mentions only the declaratory judgment claim.

that Heiss was not fraudulently joined and, thus, his status as a Rhode Island defendant destroys complete diversity. See Plaintiff's Memorandum in Support of Plaintiff's Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction (filed May 9, 2005), at 1-2.

Life Investors objects to plaintiff's motion to dismiss.

**II**
**COMPLETE DIVERSITY EXISTS BECAUSE**
**HEISS IS A FRAUDULENTLY JOINED DEFENDANT**

Plaintiff moves to dismiss Life Investors' counterclaim for lack of subject matter jurisdiction, arguing that there is an absence of complete diversity. So moving, plaintiff relies entirely on her motion to remand argument that Heiss is not a fraudulently joined defendant. Whether viewed through the lens of Rule 12(b)(1) or through a motion to remand, plaintiff's challenge to the fraudulent joinder argument is meritless. Diversity jurisdiction exists in this matter.

Diversity jurisdiction requires "complete diversity among the parties." American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004). Nevertheless, the citizenship of a fraudulently joined defendant is "disregarded in determining diversity of citizenship." Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983).

"[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A., 104 F.3d 1256, 1260 (11th Cir. 1997). Challenges to subject matter jurisdiction come in two varieties - "sufficiency" challenges and "factual" challenges. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363-64 (1st Cir. 2001). A sufficiency challenge "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. When presented

with a sufficiency challenge, "the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly." Id.

A factual challenge to subject matter jurisdiction questions the accuracy, rather than the sufficiency, of facts to support jurisdiction. Id. at 364. When assessing a factual challenge, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties.... In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." Id. (internal citation omitted).

Whether plaintiff's jurisdictional challenge is viewed as a "sufficiency" or "factual" challenge, it should be rejected. Each of the tests is discussed below.

A. Sufficiency Challenge

In its counterclaim, Life Investors avers that diversity jurisdiction exists because "Heiss had been fraudulently joined." Answer at ¶ 40. The fact that defendants have removed based on the fraudulent joinder doctrine constitutes a "jurisdictionally-significant fact[]." See Valentin, 254 F.3d at 363. Because a fraudulently joined defendant's citizenship is disregarded, Polyplastics, 713 F.2d at 877, and because Life Investors and plaintiff are citizens of different states, Life Investors' answer clearly articulates a legal basis for establishing diversity jurisdiction. Therefore, drawing all reasonable inferences in favor of Live Investors, plaintiff's motion to dismiss should be denied. See Valentin, 254 F.3d at 363.

B. Factual Challenge

Even if this Court looks to the accuracy of the allegations in Life Investors' complaint, it is apparent that diversity jurisdiction exists because Heiss truly is a fraudulently joined defendant. As fully argued in defendants' objection to plaintiff's motion to remand, fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court." Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 66 (D. R.I. 2002) (quoting Tillman v. Cont'l Plaza Hotels & Resorts, 2000 WL 33250072, at *1 (S. D. Tex. 2000)). Although this test speaks in terms of "no possibility" that the plaintiff could recover, this Court has clarified that the proper inquiry is whether there is "any reasonable possibility that a state court would rule against the non-diverse defendant." Id. (emphasis added) (quoting Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992)); accord In re Rezulin Products Liability Litigation, 133 F. Supp. 2d 272, 280 (S.D.N.Y. 2001) (noting that the "no possibility" test "cannot be taken literally" because "there always would be a 'possibility,' however remote, ... [that would] permit the plaintiff to prevail."). An example of fraudulent joinder is where a plaintiff names a local insurance agent or broker in an action for breach of an insurance agreement. See, e.g., Griggs v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999); Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983); Jabour v. Life Ins. Co. of North America, 362 F. Supp. 2d 736 (S.D. Miss. 2005).

"The right of removal is generally determined from the record and the status of the pleadings at the time the petition for removal is filed."[3] Palmquist v. Conseco Medical Ins. Co.,

[3] Although here the fraudulent joinder issue is discussed in the context of a motion to dismiss, the scope of evidence to be considered should not change. First, diversity jurisdiction is determined as of the time the complaint was filed. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992). Defendant Heiss always has been a fraudulently joined defendant. Second, a plaintiff should not be allowed to evade well-settled removal review procedures by filing a motion to dismiss.

128 F. Supp. 2d 618, 621 (D. S.D. 2000) (quoting Farm Bureau Mutual Insurance Co., Inc. v. Eighmy, 849 F. Supp. 40, 42 (D. Kan. 1994)). The parties may submit "summary judgment-type evidence," including affidavits and deposition testimony to support their respective positions on a fraudulent joinder dispute. Griggs, 181 F.3d at 700. Such evidence, however, may be used only to "clarify or amplify the claims actually alleged in the" complaint. Id. "Post-removal filings may not be considered ... when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." Id. (emphasis added).

Plaintiff's complaint is the starting and ending point for determining whether there is a "reasonable possibility" that Heiss could be liable under Rhode Island law.[4] Unfortunately plaintiff's complaint transforms the task of identifying the legal claims asserted into a daunting chore. The twenty-seven page, thirteen count complaint most charitably can be described as confusing. To the extent that any specific claim can be distilled from the complaint, it appears that plaintiff asserts: 1) three counts for breach of contract (counts I, VII and XI); 2) five counts for breach of a duty of good faith and fair dealings (counts II, VI, VIII, X and XII); 3)

---

[4] It should be noted that plaintiff's reliance on the fraudulent joinder argument in the context of a Rule 12(b)(1) motion tortures the proper jurisdictional analysis. The question of fraudulent joinder unquestionably requires an evaluation of the merits of plaintiff's claims.

> "[I]f an attack on subject matter jurisdiction also implicates an element of the cause of action, then '[t]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides ... a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion....'"

Garcia, 104 F.3d at 1261 (quoting Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir. 1981)). Therefore, because the fraudulent joinder analysis is "intertwined with the merits of the case... the court may defer resolution of the jurisdictional issue until the time of trial." See Valentin, 254 F.3d at 363 n.3.

one count for misrepresentation (count III); 4) one count for intentional infliction of emotional distress (count IV); 5) one count for negligent infliction of emotional distress (count V) and 6) two counts for violations of the Rhode Island Unfair Claims Settlement Practices Act (counts IX and XIII). Plaintiff makes no attempt to differentiate between the actions of Heiss and Life Investors. All of the counts are directed at defendants collectively and plaintiff seeks recovery from Life Investors "and/or" Heiss for all the counts.

To fortify her motion to remand, plaintiff appears to raise two new claims in her supporting memorandum (Remand Memo) and accompanying affidavit.[5] First, in her affidavit, plaintiff claims for the first time that Heiss completed the medical history portion of the application for Mr. Resendes and that neither she, nor Mr. Resendes, ever saw the answers that Heiss supposedly supplied. Affidavit of Beverly Resendes at ¶¶ 4 & 5 (hereinafter "Resendes Aff."). Plaintiff recognizes that she is making this allegation for the first time in her post-removal affidavit. Indeed, she specifically acknowledges that this allegation is "not reflected on the face of [her] complaint." See Remand Memo at 4. Plaintiff further alleges in her memorandum that she "expect[s] to present evidence that [defendant] Heiss specifically advised Mr. Resendes not to give complete and detailed information in the completion of the application for coverage." Id. Again, the complaint contained no hint of such an allegation at the time of removal. Therefore, these new allegations in plaintiff's remand motion and affidavit do not

[5] Also for the first time in her Remand Memo, plaintiff appears to claim that Heiss should be legally liable for failure to comply with Rhode Island insurance regulations requiring agents to disclose the identity of the insurance company they are representing and requiring "insurer[s]" to provide a prospective purchasers with a "buyer's guide." See Remand Memo at 5. Although her memorandum stops short of actually claiming that Heiss failed to comply with these requirements, she cites them as source of duties that "modif[y] the ordinary concepts of principal and agent in the insurance context." Id. To the extent that plaintiff attempts to base a cause of action against Heiss on either of these regulations, such a claim clearly is beyond the scope of the complaint, which contains no reference to insurance regulations.

"clarify or amplify the claims actually alleged in the" complaint. Griggs, 181 F.3d at 700. Rather, this is a transparent attempt to "present new causes of action or theories not raised" in her complaint. These allegations should be disregarded for purposes of evaluating defendants' claim of fraudulent joinder.

Soliciting insurance agents may be liable in rare instances where there is a dispute over the procurement or maintenance of insurance:

> Insurance agents and brokers have been held liable to insureds or applicants for insurance on a number of theories including breach of contract and professional negligence. Some of the cases arise in the context of an agent who fails to obtain insurance for a client as promised. In other cases, the agent obtains insurance but fails to obtain certain requested coverage or obtains the requested coverage in the wrong amount. In any of these situations, contractual liability of the agent can be at least theoretically premised on the agent's breach of an oral agreement to obtain insurance as requested by the client.

Saunders v. Cariss, 274 Cal. Rptr. 186, 188-89 (Cal. App. 1990) (internal citation and footnote omitted); accord Whatley v. National Fire and Marine Ins. Co., 1998 WL 378378, *2 (N.D. Miss. 1998). Plaintiff makes no allegation that Heiss improperly obtained, or failed to obtain, insurance coverage. All of plaintiff's counts focus on the denial of benefits under the policy.

Plaintiff attempts to raise yet another new legal argument when she questions whether Heiss may have been acting as a dual agent. See Remand Memo at 5. In raising the dual agency issue, plaintiff cites General Accident Ins. Co. v. American National Fireproofing, 716 A.2d 751, 756-57 (R.I. 1998), which held that a dual agent could be liable to an insured for failure to procure requested coverage. In the absence of a dual agency, however, "an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority." Cardente v. Maggiacomo Ins. Agency, Inc., 272 A.2d 155, 156 (R.I. 1971). The later rule insulates an agent from personal liability even if he negligently

carries out duties that he was authorized to perform. Id. Because plaintiff's complaint contains no allegation of a dual agency, and her claims do not relate to the procurement of insurance, her eleventh hour reliance on General Accident Insurance and the theory of dual agency should be disregarded.

None of the theoretical claims that might lie against Heiss as discussed in Saunders or General Accident Ins. appear in the complaint. It is therefore apparent that there is no reasonable likelihood that Heiss will be found liable under plaintiff's complaint.

**1. HEISS CANNOT BE LIABLE FOR BREACH OF CONTRACT BECAUSE HE WAS AN AGENT FOR A DISCLOSED PRINCIPAL**

Heiss's role in the relationship between Mr. Resendes and Life Investors was that of an agent for a disclosed principal - Life Investors. Assuming Life Investors did breach a contract with plaintiff, which it denies, an agent for a disclosed principal cannot be liable for a disclosed principal's breach of a contract to which the agent is not a party. Pacheco v. Massachusetts Cas. Ins. Co., 610 A.2d 111, 113 (R.I. 1992).

Plaintiff's reliance on Pacheco in her Remand Memorandum is misplaced. In Pacheco, an insured brought suit against a disability insurer and the agent who sold the policy after the insurer stopped paying benefits. The plaintiff claimed that when he purchased the disability policy, the agent incorrectly represented that the policy would provide benefits for life. Although recognizing that the agent was acting for a disclosed principal, the court held that the agent was not entitled to summary judgment because there was a question of fact as to whether he made statements regarding the duration of coverage. It was possible, the court opined, that the agent assumed contractual obligations beyond those specified in the discrete insurance policy. Id.

This case is easily distinguished from Pacheco. Plaintiff nowhere alleges that

Heiss made any representations that created contractual obligations other than those specified in the policy. Plaintiff has not alleged the existence of any agreement by Heiss to be bound personally. To the contrary, plaintiff expressly alleges that "each of [the] defendants was acting within the course and scope of said agency, service, employment, partnership or joint venture." Complaint at ¶ 7. There is no allegation that Heiss ventured beyond his actual or apparent authority.

The only agreement addressed in the complaint is the Life Investors life insurance policy attached as thereto as Exhibit A. The policy specifically indicates that it "is a legal contract between the policy owner and the company." See Policy at 3. Because Heiss merely acted as an agent for Life Investors, whose identity was disclosed to Mr. Resendes, Heiss cannot be liable for any alleged breach of the insurance contract. See e.g., Pacheco, 610 A.2d at 113; Cardente v. Maggiacomo Ins. Agency, Inc., 272 A.2d 155, 156 (R.I. 1971).

### 2. HEISS CANNOT BE LIABLE FOR BREACH OF A DUTY OF GOOD FAITH AND FAIR DEALING BECAUSE HE IS NEITHER AN INSURER, NOR A PARTY TO THE INSURANCE CONTRACT

Plaintiff cannot maintain a bad faith claim against Heiss. Although not explicitly cited in her complaint, plaintiff appears to assert claims pursuant to R.I. Gen. Laws § 9-1-33, which provides a cause of action against an insurer who wrongfully and in bad faith refuses to settle or pay a claim. See counts II, VI, VIII, X and XII. The Rhode Island Supreme Court, however, has specifically held that "§ 9-1-33 applies only to insurers...." LeFranc v. Amica Mut. Ins. Co., 594 A.2d 382, 385 (R.I. 1991). Moreover, "[b]efore a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract." Robinson v. Mayo, 849 A.2d 351, 356 n.6 (R.I. 2004) (quoting Lamoureaux v. Merrimack Mutual Fire Insurance Co., 751 A.2d 1290, 1293 (R.I. 2000)). Therefore, because Heiss was an agent rather than an insurer and was not a party to the insurance contract, § 9-1-33

is not a potential source of liability for Heiss.

To the extent plaintiff asserts a common law bad faith claim, such a claim would be equally meritless. "To succeed on a common law bad-faith claim in Rhode Island, a plaintiff must demonstrate the absence of a reasonable basis for denying the policy benefits and that defendant had knowledge or recklessly disregarded the lack of a reasonable basis for denying the claim." Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003). Heiss did not deny plaintiff's claim. Life Investors did. Plaintiff and her attorney were in regular contact with Life Investors while her claim was under review. Life Investors - not Heiss - sent plaintiff's attorney a letter officially denying her claim. Heiss's name does not appear on the denial letter. He had no involvement in the decision to deny benefits. Therefore, Heiss did not deny benefits and plaintiff cannot maintain a common law bad faith claim against him. Further, because he was not a party to the insurance contract, Heiss had "no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery." See Jabour v. Life Ins. Co. of North America, 362 F. Supp. 2d 736, 741 (S.D. Miss. 2005).

### 3. PLAINTIFF'S REMAINING CLAIMS DO NOT SPECIFY ANY CONDUCT ATTRIBUTABLE TO HEISS

Plaintiff's complaint fails to demonstrate a reasonable probability that she will prevail against Heiss on her remaining claims for negligent and intentional infliction of emotional distress, misrepresentation or alleged violations of the Rhode Island Unfair Claims Settlement Practices Act. Plaintiff makes no allegation specific to Heiss to support any of these claims.[6] Rather, all of the claims are directed at defendants collectively. By "lump[ing]"

[6] The only allegations arguably pertaining solely to Heiss appear in ¶¶ 77-80, 85-87, & 89-91, and are provided to support her contract and bad faith claims. As discussed above, these claims have no chance of success against Heiss.

accusations of wrongdoing against Heiss and Life Investors collectively and without identifying any actionable conduct attributable to Heiss particularly, plaintiff has failed to specify how Heiss may have caused her any harm. See In re Rezulin Products Liability Litigation, 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) (finding fraudulent joinder in part because the complaint "lump[ed]" allegations of wrongdoing against multiple defendants without specifying how a particular defendant harmed plaintiffs). Moreover, Heiss cannot be liable to plaintiff because he is an agent for a disclosed principal and, at all times relevant, he acted within the scope of his authority. See Complaint at ¶7; Cardente, 272 A.2d at 156.

The mere fact that plaintiff alleges a claim against Heiss is not sufficient to prevent removal. Although the fraudulent joinder analysis supposes that factual disputes will be resolved in favor of the non-removing party, that rule arises "'*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts.' A court should not, 'in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts' to support [her] claims against the non-diverse defendant." Banger ex rel. Freeman v. Magnolia Nursing Home, L.P., 234 F. Supp. 2d 633, 637 (S.D. Miss. 2002), (quoting Badon v. RJR Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000)). Plaintiff has offered no allegations specific to Heiss to substantiate her tort or statutory claims against him. "[C]onclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined." Id.

## CONCLUSION

Because Heiss is a fraudulently joined defendant, complete diversity exists between the parties. This Court has jurisdiction. Life Investors respectfully requests that this Court deny plaintiff's motion to dismiss counterclaims.

Brooks R. Magratten, Esq., #3585
Michael J. Daly, Esq., #6729
VETTER & WHITE
Attorneys for Defendant Life
Investors Insurance Company of America
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated: May 23, 2005

## CERTIFICATE OF SERVICE

To:

Wayne G. Resmini, Esq.
Resmini Law Associates
207 Waterman Street
Providence, RI 02903

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street, Suite 330
Providence, RI 02903-2814

I hereby certify that I caused to be served on the above-named counsel of record a copy of the within Memorandum in Support of Defendant Life Investors Insurance Company of America's Objection to Plaintiff's Motion To Dismiss Counterclaims by mailing first class mail, postage prepaid, on the 23rd day of May 2005.

[signature]